Clarence RUTLAND, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Oct. 30, 1979.

Jack E. Farley, Public Advocate, Timothy T. Riddell, Asst. Public Advocate, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Martin Glazer, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

On July 8, 1973, Mike Roark was murdered and Knight's Gulf Service Station, where he was working, located at the intersection of I65 and 31W, south of Franklin, Kentucky, was robbed. On June 25, 1977, the appellant was indicted for murder (KRS 507.020) and first-degree robbery (KRS 515.020), pursuant to the terms and provisions of the Kentucky Penal Code. The Code was adopted and became effective on January 1, 1975, some year and a half subsequent to the commission of the subject offenses. Since the offenses were committed prior to the effective date of the Code, the trial court, on due and timely notice, dismissed the indictments and referred the case to the grand jury for further consideration (KRS 500.040(1)). Thereupon, the grand jury indicted the appellant for the offenses of aiding and abetting in the commission of the offense of voluntary manslaughter and aiding and abetting in the commission of the offense of armed robbery.

Inasmuch as both the killing and the robbery occurred prior to the effective date of the Kentucky Penal Code (January 1, 1975), we are limited to the definitions of aiding and abetting in the commission of voluntary manslaughter and aiding and abetting in the commission of armed robbery as defined at the time of the commission of the offenses (July 8, 1973), and they will be so considered in this discourse.

A two-day trial (June 20–21, 1978) resulted in the jury finding the appellant guilty of both offenses and fixing his punishment at imprisonment in the state penitentiary for a period of twenty years on each offense. The trial judge ordered the sentences to run consecutively.

On this appeal the appellant charges (1) that the trial court erred in not entering a verdict of acquittal on all charges and (2) that the cumulative effect of errors committed during the appellant's trial deprived him of a fair trial.

The appellant did not testify nor did he offer any evidence. In other words, the appellant argues that in considering the evidence as a whole it would be clearly unreasonable for a jury to find him guilty and, having found him guilty, acted unreasonably.

■ In *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530 (1977), while considering the sufficiency of the evidence to justify the submission of the innocence or the guilt of the accused to a jury and to uphold a verdict of guilty, we said:

> "If under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal. * * * "

■ Applying this criterion to the subject case, we must analyze the evidence adduced at the trial. First of all, to commit the offense of aiding and abetting in the commission of a crime, the crime itself must be proven and the person charged with doing the aiding and abetting must have participated. It is true, as appellant contends, that the Commonwealth is required to show guilt of a principal in the commission of a homicide before there can be a conviction of another person as an aider and abettor. *Bryant v. Commonwealth,* Ky., 277 S.W.2d 55 (1955). Aiding and abetting is defined as follows:

> "To constitute one an aider and abettor, he must not only be on the ground, and by his presence aid, encourage, or incite the principal to commit the crime,

but he must share the criminal intent or the purpose of the principal." *Moore v. Commonwealth,* Ky., 282 S.W.2d 613 (1955).

The case of *Cavanaugh v. Commonwealth,* 172 Ky. 799, 190 S.W. 123 (1916), succinctly defines voluntary manslaughter as a killing done either in a sudden affray or in a sudden heat of passion and upon provocation ordinarily calculated to excite the passion beyond control. We have consistently followed the statement in *Cavanaugh.*

■ The offense of armed robbery is explicitly defined by statute as the commission of robbery by the use or display of a pistol, gun or other firearm or deadly weapon. *Napier v. Commonwealth,* Ky., 356 S.W.2d 755 (1962).

On July 8, 1973, between the hours of 8:30 and 9:00 a. m., Mr. and Mrs. Herschel Franklin drove into the service station and, without getting out of their car, saw Mike Roark covered with blood lying in the bay portion of the service station building. They hurriedly drove away to report their findings to the sheriff. Not being able to locate the sheriff, they reported their find to the city police. Upon returning to the service station, police officers had already gathered. Roark was dead, having been shot with a .12-gauge shotgun. A spent shotgun shell was found nearby. Blood was found in the office and other areas and the telephone receiver was hanging off the hook.

On July 13, 1973, at 8:51 a. m., Jack Gibbs, the manager of a used-car sales lot in Sheffield, Alabama, reported the theft of a 1971 Pontiac Grand Prix, burnt orange in color, with orange top and matching vinyl. It had an Alabama license tag, 41–9702, and vehicle identification number 276571A163435.

On July 28, 1973, the appellant and his brother were arrested in Detroit, Michigan, while in the stolen vehicle. The appellant had been using three alias names, Clark, Claude and Frosty. Upon his arrest he was charged with the offense of felonious as-

sault and was fingerprinted under the alias name of Clark Rutland. These fingerprints were proven to be those of the appellant when compared to the fingerprints made of him on December 7, 1977, when he was arrested for the murder of Mike Roark.

On February 22, 1974, Alvis Ray Hudson found a metal money box containing a bill-fold, a Social Security card bearing the name of Mike Roark, several credit cards and a .12-gauge shotgun in a ditch of a gravel road, at a distance of about 800 feet from Kentucky Highway 100. All of these were turned over to the police. The gun was identified as the one used to kill Roark. It was purchased on August 14, 1971, by J. B. Rutland, the appellant's father, from Sears, Roebuck & Company. The appellant had been visiting with his father in Sheffield, Alabama, from July 3 to July 8, 1973, when he left home and was not accounted for until his arrest in Detroit, Michigan, on July 28, 1973. The elder Rutland lived about one and one-half miles from the used car lot.

The amount of money stolen from the service station was estimated to be between $35–$40. Counsel for appellant makes much to do about there being a failure on the part of the Commonwealth to establish that at least $20 in cash or merchandise had been stolen. As we have heretofore pointed out in the definition of armed robbery, there was no value limitation required. Even though the evidence relating to the offense of armed robbery, especially aiding and abetting in the commission of armed robbery as in this case, is scant as to the value, it is much less convincing that the appellant committed armed robbery or aided and abetted in the commission of armed robbery. We are not saying that the appellant did not commit armed robbery; what we are saying is that the evidence is not sufficient to prove him guilty beyond a reasonable doubt.

The appellant, while consistently denying his guilt, did on three separate occasions offer, for a consideration, to make known to the officers the name of the person who committed the murder and robbery. The police made no effort to pursue the appellant's offer.

Counsel for the Commonwealth makes a gallant effort to show how it was possible for the appellant to drive over a route consistent with the best route from Sheffield, Alabama, to Detroit, Michigan, and dispose of the gun, billfold and other items where they were found. Even so, there is no evidence that in anyway connects the appellant with having driven over this route or having been on the gravel road where the articles were found. The use of this escape route by someone other than the appellant, who may have committed these offenses, is as consistent as if the appellant himself had committed the offenses and used this route to make his getaway. It is pure supposition to think that had the offenses been committed by a person other than appellant that the escape route would not have been the one suggested by the Commonwealth's Attorney.

As far as this record reveals, no one now stands charged with the murder of Mike Roark or with the robbery of the service station. The appellant had been indicted for those offenses; however, the indictments were dismissed and the grand jury to which the facts were resubmitted indicted him for aiding and abetting, but not for the primary offenses. All we have been presented with are surmises, presumptions and conjectures.

In *Moore v. Commonwealth*, Ky., 488 S.W.2d 703 (1972), we said:

"We have many times held that a conviction may be had upon circumstantial evidence but require that it do more than just create a suspicion. It should be of such character that reasonable minds would be justified in concluding that the person charged was guilty beyond a reasonable doubt. In most instances the question of the sufficiency of circumstantial evidence is for a jury. However, where evidence fails to incriminate the accused or is wholly insufficient to show guilt, the court should entertain the accused's motion for a peremptory instruction."

Counsel for the Commonwealth lays much emphasis on the fact that the murder weapon was the property of the appellant's father. There is nothing in the record to connect the appellant with the gun, and certainly this court cannot assume that the appellant had possession of or the use of the weapon at any time by reason of his father being the owner of the gun.

Applying the criteria enunciated in *Trowel v. Commonwealth,* supra, we are of the opinion that the evidence was not sufficient to justify the submission of the question of appellant's guilt or innocence to the jury, and the trial court should have entered a judgment of acquittal on both charges.

Since this case is being reversed because there is insufficient evidence to justify its submission to the jury, it is unnecessary that we opine whether the court committed trial errors, the cumulative effect of which would require a reversal.

The judgment is reversed and the case is remanded to the Simpson Circuit Court with directions to enter a judgment of acquittal.

All concur, except CLAYTON, J., who dissents and files a dissenting opinion.

CLAYTON, Justice, dissenting.

The majority of the court has reversed appellant's conviction for aiding and abetting voluntary manslaughter and aiding and abetting armed robbery on the grounds that there was insufficient evidence to justify submitting the case to the jury. I disagree and respectfully dissent from the opinion and holding of the court.

As has been noted by the court, the standard to be used by the trial judge in assessing the sufficiency of the evidence in order to determine whether the case should be submitted to the jury is that after considering the evidence as a whole "it would not be clearly unreasonable for a jury to find the defendant guilty . . . ." *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530 (1977). It would appear that there are two distinct aspects of this criterion: first, that the judge consider the evidence as a whole,

meaning *all* the evidence viewed most favorably to the Commonwealth (*Jones v. Commonwealth,* Ky., 554 S.W.2d 363, 366 (1977)); and second, after looking at the evidence to decide if it would not be *clearly unreasonable* for a jury to find the defendant guilty. Taken together, those two elements should make this or any reviewing court extremely hesitant to supplant the decision of the trial court with its own opinion.

It has been established law for some years that a conviction based on circumstantial evidence may be upheld and, as the majority opinion quotes, "In most instances the question of the sufficiency of circumstantial evidence is for a jury." *Moore v. Commonwealth,* Ky., 488 S.W.2d 703 (1972). Although "the evidence of guilt was somewhat short of spectacular," *Jones v. Commonwealth,* 554 S.W.2d at 365, in this case a reasonable mind could, I think, be justified in concluding that the appellant Rutland was guilty of the aiding and abetting offenses with which he was indicted. The most incriminating piece of evidence was the uncontested testimony by one of the investigating officers that Rutland stated to him that he could solve the case and could tell the officer who committed the murder. This would certainly indicate to a reasonable person a significant degree of complicity to the crimes. Adding to that evidence the facts that the murder weapon belonged to Rutland's father and that the weapon was found in the vicinity of the manslaughter-robbery, that Rutland had left Alabama shortly before the date of the crimes and had traveled north to Detroit during that time could, taken collectively, make it reasonable for a jury to find Rutland guilty.

The jury was, and is, totally free to reject whatever theory the prosecution presents should they question its validity or if they have any reasonable doubts as to whether the individual charged is the guilty party.

To say that "it would not be clearly unreasonable for a jury to find a person guilty" is not mere legal rhetoric to be taken lightly or perfunctorily but rather a

very serious consideration to be implemented by the courts at both the trial and the appellate levels. Just as the jury is guided by the instructions and the standards of proof presented to it, so should the judiciary be guided by the standards it sets for itself.