Peggy Ann WOLBRECHT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

and

Arthur FEAKINS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Nos. 95–SC–229–MR, 95–SC–230–MR.

Supreme Court of Kentucky.

Oct. 30, 1997.

Hugh B. Bishop, Elizabeth E. Vaughn, Henderson, Frank X. Gliozzo, Coral Gables, FL, for Appellant Wolbrecht.

Kevin A. Francke, Henderson, for Appellant Feakins.

A.B. Chandler, III, Attorney General, Matthew D. Nelson, Joseph R. Johnson, Assistant Attorneys General, Frankfort, for Appellee.

## OPINION

STEPHENS, Chief Justice.

Appellants, Peggy Ann Wolbrecht and Arthur Feakins, were convicted of murder by complicity, as defined by KRS 507.020 and 502.020, and were each sentenced to 20 years imprisonment. They appeal to this Court as a matter of right. While appellants raise numerous issues in their appeals to be reviewed by this Court, the main issue this Court will address is whether the trial judge erred by: (1) permitting the Commonwealth, over defense counsels' objection, to amend the indictment enlarging the basis for their conviction midway through the trial; and (2) failing to grant a sufficient continuance to allow the defendants to adequately prepare a new defense.

Robert Wolbrecht [hereinafter "Robert"] was shot and killed in the early morning hours of September 1, 1985, in Henderson County, Kentucky after being badly beaten and shot three times with a .22 caliber weapon. His widow, Peggy Ann Wolbrecht, his son-in-law, Arthur Feakins, and his nephew by marriage, Bobby Taylor, were indicted on March 2, 1993, for his murder.

The indictment charged Peggy Ann Wolbrecht, Arthur Feakins and Bobby Taylor with Murder by Complicity under KRS 507.020 and 502.020, and read as follows:

> That on or about September 1, 1985, in Henderson County, Kentucky, the defendants, Peggy Ann Wolbrecht, Bobby Gene Taylor, and Arthur Feakins, committed the offense of murder by shooting Robert J. Wolbrecht with a pistol, or by soliciting, aiding, counseling, or engaging in a conspiracy with the remaining defendants named herein as a result of which one (1) of the defendants shot and killed Robert J. Wolbrecht with a pistol.

The Bill of Particulars filed with the trial court on December 13, 1993, read as follows:

> The approximate date, time and location of the murder occurred on September 1, 1985, at 2:00 o'clock a.m. at 334 Walnut Lane, Henderson, Kentucky. The solicitation, aiding, counseling, or engaging in a conspiracy regarding said murder occurred prior to this date and time in Hollywood, Florida. Possible eyewitnesses to the murder or who can place defendant in the vicinity of the murder are Arthur Raymond Feakins and Bobby Gene Taylor.

Prior to trial, local counsel for the defendants moved to withdraw, stating a conflict of interest and requesting co-defendant, Bobby Taylor's trial be separated from the trial of Wolbrecht and Feakins. Consequently, the

co-defendant, Taylor, was not present during the trial of Wolbrecht and Feakins.

Wolbrecht's and Feakins' trial commenced on January 24, 1995. During voir dire and opening statements, both the Commonwealth and defense counsel read the indictment to the jury, focusing on the specific charges set out in the indictment. Testimony elicited at trial indicated that Robert Wolbrecht came from Hollywood, Florida to Henderson, Kentucky for the spring-summer racing meet at Ellis Park. He was a 46 year-old jockey who during the race meet lived in a sparsely furnished house owned by Peggy Ann Wolbrecht's brother, Robert Fambrough.

Robert Wolbrecht was an "older" jockey and had not had a winning season. However, on August 31, 1985, he won the fourth race on a horse named Dixie Flyer. Dixie Flyer paid $24.80 to win. On that same evening Robert Wolbrecht and some other "track people", including other jockeys, trainers, and owners, were at the Ramada Inn Starting Gate Lounge, located in Henderson, Kentucky. Some were celebrating the birthday of a jockey, but Robert was celebrating his "big win" that day. In fact, he flashed a stack of one-hundred-dollar bills and bought drinks for everyone, including a man named Elvie Cobb. Cobb had been evicted from the track for suspicion of booking and gambling on August 31, 1985.

Robert Wolbrecht was also seen at another bar that night. However, witness testimony varied regarding the actual time he was present at the two establishments. One witness testified that he saw Robert's truck leaving the Black Horse Lounge parking lot between 1:45 and 2:00 a.m. Another witness testified Robert left the Starting Gate Lounge with Elvie Cobb and a blond jockey around 2:00 a.m. Sgt. John Ricks saw him at the Black Horse between 11:00 p.m. and midnight.

Wolbrecht's body was discovered about 2:00 p.m., Sunday, September 1, 1985, by Robert Fambrough's son, Marty Fambrough. His body was found badly beaten, shot three times and his feet were crossed at the ankles. Marty immediately notified the police.

When Robert left Florida for Kentucky, Peggy Ann Wolbrecht was operating a nursing home out of their residence. The business netted approximately $4,000 per month. Testimony indicated that Robert was not pleased that his wife was operating a nursing home out of their residence.

The Commonwealth's theory was that Robert was planning to return to Florida after the Ellis Park racing season to "clean house," which apparently meant getting rid of the older people living in his house, as well as Feakins and Taylor, who were also living there. Feakins was and is married to the Wolbrechts' older daughter, Melodie. Feakins testified that Robert once threatened to shoot certain parts off of him when it was announced that Melodie was pregnant and that she and Feakins were planning to be married. Feakins and Wolbrecht both testified that at that time, Robert went to get his gun and Feakins, subsequently, left. Robert still fired the pistol even though Feakins had left. Nevertheless, after Melodie and Feakins were married, Robert helped Feakins get started in the lawn mowing business. The two frequently worked together and Robert gave Feakins his confirmation name in the Roman Catholic Church.

During 1984 and 1985, a number of home invasion robberies occurred in south Florida. Feakins was involved in some of these robberies and entered into a plea agreement in the state of Florida. Others convicted in these crimes were Anthony Caracciolo [hereinafter "Caracciolo"] and Jay Richitelli [hereinafter "Richitelli"], Richie Fererro, Scott Richitelli, Frank Zucarello, Ronny Morano, and unnamed others. Feakins cooperated with Florida authorities in solving these crimes and Caracciolo and Richitelli were subsequently convicted for the robberies as well as for the murder of a Miami contractor. It was never suggested that any of these people, other than Feakins, were involved in Robert's murder until after the indictment was amended, and particularly in the Commonwealth's closing argument.

The Commonwealth transported Richitelli and Caracciolo from their jail cells in Florida to the Henderson County Detention Center in Henderson, Kentucky to testify on behalf of the Commonwealth at the trial of Wolbrecht and Feakins. Caracciolo testified that

sometime in March, 1985, he purchased a .22 High Standard pistol for Richitelli who was under age at the time.

Both Richitelli and Caracciolo, testified that the pistol, equipped with a silencer, was "loaned" to Feakins. Richitelli testified that Feakins and Richard Fererro approached him sometime before the Labor Day Weekend in 1985, and asked him if he had a .22 caliber weapon with a silencer they could borrow. Richitelli testified that Feakins told him that they wanted the gun to kill Robert. Wolbrecht was not present during this meeting, but Richitelli stated that he talked with her via the telephone during the meeting and she told him he would be "accommodated for the weapon." Richitelli stated that Feakins and Fererro left the building with the gun. Richitelli stated he next saw the gun after Labor Day weekend, 1985, when both Feakins and Fererro returned the gun to him and told him they did not use the weapon. Both Richitelli and Caracciolo testified that in early January, 1986, in Caracciolo's apartment, Wolbrecht commented that Robert would not be coming back to Florida to clean up her house because she had "taken care of it."

Wolbrecht testified at the trial that she filed for divorce in 1973, but she and Robert got back together three to four weeks later. She claimed that she never met any of the people who had implicated her in the murder and never said "I took care of that". She testified that at no time did she ever ask for a gun with a silencer and stated that she did not plan the murder of her husband with anyone. She testified that she did not aid or abet having her husband killed and did not solicit anyone to kill him.

Not one witness placed either Wolbrecht, Feakins or Taylor anywhere near the vicinity of Robert's murder in Henderson, Kentucky during the Labor Day weekend of 1985. Testimony at trial indicated that both Wolbrecht and Feakins were in Florida on that weekend, although Richitelli testified that Feakins told him he had been "present" at Robert's murder.

The trial in this case was initially scheduled to begin on September 20, 1984. However, the Commonwealth filed a Motion for

Postponement and the trial ultimately began on Tuesday, January 24, 1995. On the fifth day of the trial, Friday, January 31, 1995, the Commonwealth moved to amend the indictment pursuant to RCr 6.16, after Richitelli was called to the stand, but before completion of the Commonwealth's examination. Major Don Farris of the Henderson Police Department, was the only witness called by the Commonwealth after completion of Richitelli's testimony.

Defense counsel strongly objected to the Commonwealth's Motion to Amend and a lengthy hearing was conducted in chambers. The trial court eventually granted the Commonwealth's motion to amend and overruled the defense's motion for a continuance on January 31, 1995, midway through Richitelli's testimony. Following the trial the defendants moved for a new trial, citing newly discovered evidence, as well as other errors committed by the trial court. The Motion for a New Trial was overruled and these appeals followed.

As previously mentioned, the original indictment charged Peggy Ann Wolbrecht, Arthur Feakins and Bobby Taylor with Murder by Complicity under KRS 507.020 and 502.020, and read as follows:

That on or about September 1, 1985, in Henderson County, Kentucky, the defendants, Peggy Ann Wolbrecht, Bobby Gene Taylor, and Arthur Feakins, committed the offense of murder by shooting Robert J. Wolbrecht with a pistol, or by soliciting, aiding, counseling, or engaging in a conspiracy with the remaining defendants named herein *as a result of which one (1) of the defendants shot and killed* Robert J. Wolbrecht with a pistol.

(emphasis added). However, nearly two years later and five days into the trial, the indictment was amended to charge:

That on or about September 1, 1985, in Henderson County, Kentucky, the defendants, Peggy Ann Wolbrecht, Bobby Gene Taylor, and Arthur Raymond Feakins, committed the offense of murder by shooting Robert J. Wolbrecht with a pistol, or by soliciting, aiding, counseling, or engaging in a conspiracy with the remaining

defendants named herein as a result of which *Robert J. Wolbrecht was shot and killed with a pistol.*

(emphasis added).

RCr 6.16 provides:

The court may permit an indictment, information, complaint or citation to be amended any time before verdict or finding if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. If justice requires, however, the court shall grant the defendant a continuance when such an amendment is permitted.

■ Our case law provides that an indictment may be amended at any time to conform to the proof providing the substantial rights of the defendant are not prejudiced and no additional evidence is required to amend the offense. See *Yarnell v. Commonwealth*, Ky., 833 S.W.2d 834 (1992); *Schambon v. Commonwealth*, Ky., 821 S.W.2d 804 (1991). It has additionally been held that reasonable certainty about the charge is required, *Runyon v. Commonwealth*, Ky., 393 S.W.2d 877 (1965), and that a defendant has the right to rely on the fact that he would only have to rebut evidence of which he was given notice. *Commonwealth v. Ellis*, 133 Ky. 625, 118 S.W. 973 (1909). Finally, the United States Supreme Court held in *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), that after an indictment has been returned, its charges may not be broadened through amendment except by the grand jury itself.

■ The prosecution's amendment of the indictment to include some unknown killer was a substantive change which prejudiced both Wolbrecht's and Feakins' substantial rights. Appellants had the right to rely on the information they had been given in the indictment and Bill of Particulars in preparation of their defense. When the Commonwealth failed to prove, as charged in the original indictment, that Wolbrecht, Feakins or Taylor actually shot and killed Robert, the trial court improperly allowed an amendment to encompass a new charge—that either Feakins or Wolbrecht helped someone, anyone, or everyone to murder Robert. They were

unduly and unfairly surprised near the conclusion of the Commonwealth's case with a new charge that they each had engaged in a conspiracy with some anonymous co-conspirator to murder Robert Wolbrecht. This clearly prejudiced both Wolbrecht and Feakins.

The Commonwealth's reasoning in requesting the amended indictment supports the conclusion that appellants' constitutional rights were violated. As the prosecutor specifically told the trial court: "There is nobody named as the trigger man ... We are saying that as a result of what they did, that they directed the actual killing. Somebody else killed him. In the meantime. They're off the hook." This admission was a dramatic, 180 degree turn in the case because the indictment had accused Wolbrecht, Feakins, and Taylor as principals *and* accomplices. This cavalier disregard of a person's right to be free from unsubstantiated criminal charges is outrageous and intolerable. Had the Commonwealth fairly informed appellants of its intentions, the defense could have developed its strategy accordingly. However, this turn of events midway through the trial placed the defense in the position of beginning its case totally unprepared on the issue raised by the amended indictment. Appellants prepared their defense based upon the activities of the three (3) defendants and the three (3) defendants only because that is what the Commonwealth had alleged to be the case against them.

■ Moreover, appellants were further harmed when the trial court failed to grant defense counsel's Motion for a Continuance. When the indictment was amended to include anyone and everyone, the defense should have been given the opportunity, by way of a continuance, to analyze its case anew and prepare a defense based upon the broadened theory now presented by the Commonwealth. The Commonwealth had more than nine years to get it right, but appellants had only three days to ascertain further alibis. Appellants were entitled to a continuance to discover additional evidence needed to appropriately defend the new charges. *Schambon v. Commonwealth, supra.*

■ Based upon the original indictment, as supplemented by the Bill of Particulars, all investigation and defense preparation was targeted at providing alibi witnesses for Wolbrecht, Feakins and Taylor. The function of the Bill of Particulars in a criminal case is to provide information fairly necessary to enable the accused to understand and prepare his defense against the charges without prejudicial surprise upon trial. *Brown v. Commonwealth*, Ky., 378 S.W.2d 608 (1964), *rev'd on other grounds, Payne v. Commonwealth*, Ky., 656 S.W.2d 719 (1983).

In the case at bar, there was no notice, or even suggestion, that another or others might be involved in Robert's murder until January 31, 1995, when the Commonwealth's Motion to Amend the Indictment was heard. It was at that time, that appellants learned for the first time, that they would suddenly have to defend themselves against the allegation that they had each solicited an unnamed person, not one of their co-defendants, to kill Robert Wolbrecht.

■ Furthermore, the Bill of Particulars was never supplemented or amended. No other names were provided to the defense as being involved in the conspiracy to commit murder. Appellants were given no notice whatsoever, not a hint of a suggestion, that they would be ambushed at trial with a new theory of the case. To their significant prejudice they were prepared to defend against the charges in the indictment and allegations in the Bill of Particulars—that the three co-defendants plotted and carried out a murder. The Commonwealth had nine and one-half years to ascertain the identity of the co-conspirators, if any, and nature of the crime. Moreover, for two years following the indictment, the Commonwealth maintained that Wolbrecht, Feakins and Taylor were the only actors in the murder of Robert Wolbrecht. Only after it was too late for appellants to investigate and defend against a broadened charge, did the Commonwealth change its description of the offense. Appellants had no opportunity to refute the additional accusations, and as such, the trial court committed reversible error. *Maum v. Commonwealth*, Ky., 490 S.W.2d 748 (1973). Consequently, we reverse on this issue.

Appellants further assert that several other highly prejudicial errors occurred at trial. After a careful review of the record, we determine that such claims are without merit and, thus, affirm on those issues.

For the aforementioned reasons, we reverse the convictions of Peggy Ann Wolbrecht and Arthur Feakins and remand the cases to Henderson Circuit Court for a new trial.

JOHNSTONE, LAMBERT and STUMBO, JJ., concur.

COOPER, J., dissents in a separate dissenting opinion.

GRAVES and WINTERSHEIMER, JJ., join this dissenting opinion.

COOPER, Justice, dissenting.

An indictment may be amended "any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." RCr 6.16. The amendment in this case was granted more than two weeks prior to the conclusion of the trial. The amendment did not charge an additional or different offense and no additional evidence was required to prove the amended charge. *Schambon v. Commonwealth*, Ky., 821 S.W.2d 804 (1991). Both the original indictment and the amended indictment charged Appellants with murder either as principals or by complicity. An amendment which only alleges a different method of committing the same offense does not prejudice the substantial rights of the defendant. *Cf. Robards v. Commonwealth*, Ky., 419 S.W.2d 570 (1967).

Prior to the adoption of the penal code, the Commonwealth was required to prove the guilt of the principal before the defendant could be convicted of complicity. *E.g., Rutland v. Commonwealth*, Ky., 590 S.W.2d 682 (1979) (offense committed prior to effective date of the penal code, but conviction obtained thereafter). KRS 502.030(1) now makes the disposition of the charge against the principal immaterial to the liability of the accomplice. Logically, however, the Commonwealth's inability to prove the identity of the principal offender inures to the benefit of a defendant charged with complicity. How could an amendment of the indictment to

conform to this failure of proof prejudice the substantial rights of the defendant?

Even under pre-code law, an indictment for complicity was not defective because it failed to identify the principal. *Wheeler v. Commonwealth,* Ky., 395 S.W.2d 565 (1964), *cert. denied,* 385 U.S. 826, 87 S.Ct. 58, 17 L.Ed.2d 62 (1966); *Howard v. Commonwealth,* 110 Ky. 356, 61 S.W. 756 (1901). If the identity of the principal is not required in an indictment for complicity, the attempted identification of the principal in the original indictment in this case was unnecessary and the amendment only deleted what should be regarded as surplusage.

Nor did the trial judge abuse his discretion in denying the motion for a continuance. The defense in this case was a denial of any involvement in Robert Wolbrecht's death and an attempt to explain away the incriminating evidence presented by the Commonwealth. Appellants do not suggest what they might have done differently if given additional time to contemplate the Commonwealth's failure to prove the identity of the principal as reflected in the amended indictment. I would affirm the judgments of conviction and the sentences imposed by the Henderson Circuit Court.

Graves and Wintersheimer, JJ., join this dissenting opinion.