### Hough & Spradlin Company v. Moreland's Administratrix.

(Decided September 24, 1914.)

Appeal from Bourbon Circuit Court.

Master and Servant—Care Required of Master.—Where a fireman was killed by the explosion of a stationary boiler, and there was evidence to show that the boiler was equipped with a water glass as well as water gauges, and that the water glass had been broken a sufficient length of time before the explosion to enable the master, who knew that it was broken, to supply a new one, it was negligence not to do so. When machinery is equipped with

more than one safety appliance, and one of these appliances is better adapted to use by unskilled persons than the other, it is the duty of the master to use reasonable care to keep all of the appliances in working order so that the unskilled servant may have all the protection that the conditions surrounding him reasonably permit.

BRUCE & BULLITT and EMMET DICKSON for appellant.

ROBT. B. FRANKLIN and TALBOTT & WHITLEY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Edward Moreland was killed by the explosion of a stationary boiler at which he was engaged as a fireman. The boiler was used by the appellant in the operation of steam drills, and Moreland, who was a man of mature years but not an engineer or a skilled mechanic, had been firing it for a few months.

In this action by his administratrix to recover damages, there was a judgment against the appellant for two thousand dollars.

The petition stated in a general way a sufficient cause of action based on defects in the construction of the boiler and negligence in failing to keep it equipped with a water glass. Some question is made about the action of the lower court in permitting an amended petition to be filed, and it is also said that the pleadings did not authorize the submission of the issues upon which the case went to the jury. But this assignment of error is not well founded. It was not necessary that the amended petition should have been filed, as the original petition set out as fully as was necessary the cause of action upon which the case was tried and the jury instructed.

It appears from the evidence that this boiler was equipped with a water glass and also three water cocks. The water glass was situated so that it was always before the eye of the fireman, who could tell by looking at the glass whether or not there was a sufficient supply of water in the boiler. The water cocks were also convenient to the fireman, but it was necessary that they should be turned in order to determine from them whether the supply of water was adequate.

The undisputed evidence is that the water glass on this boiler was broken and useless at the time the explosion occurred, and there is evidence to the effect that

the fact that it was broken and useless for the purpose intended was discovered, and the foreman of the Hough & Spradlin Company notified of the fact several hours before the explosion occurred, and that he promised to have a new water glass put in its place. It also appears that the foreman, a short while before the explosion, directed one of the employes whose duty it was to repair fixtures like this, to put in a new water glass, and that this employe was at the boiler for the purpose of making the repairs when the explosion occurred.

There was also much evidence introduced by both parties on the subject of the general condition of the boiler. Witnesses for the plaintiff, who were qualified to testify, said that the explosion was due to defective or weak seams in the boiler; while other witnesses, equally as well qualified, testified that the boiler was new, of modern make, and perfectly safe if used with ordinary care. There was also evidence tending to show that the steam drills being operated by the boiler had stopped a few minutes before the explosion and that the stopping of the drills had the effect of increasing the pressure on the boiler, thereby making it more susceptible to explosion than it would have been if the drills had been in operation.

The case for the plaintiff proceeded on the theory that the boiler was defective and that the defendant company was negligent in failing to replace the broken water glass; while the defense was that the explosion was due to an insufficient supply of water in the boiler and that this condition was brought about by the negligence of Moreland, who could, by turning the water cocks, have easily ascertained the condition of the water.

It is urgently pressed on our attention by counsel for appellant that the jury should have been instructed to return a verdict in favor of the defendant, and this argument, leaving out of view for a moment the water glass, is advanced on the theory that the evidence does not show with sufficient clearness to justify a recovery whether the explosion was due to the defective condition of the boiler or to the fact that the supply of water was not adequate.

We think, however, the evidence of the experts who testified that the explosion was not due to lack of water, and the evidence of Harvey Hunter, an employe of the defendant company, and whose duty it was to put in

a new water glass, was sufficient to take the case to the jury on the issue whether the explosion was due to defects in the boiler or lack of water. Hunter testified that a few minutes before the explosion occurred he discovered that the water was getting low, and that after calling the attention of Moreland to this fact, he turned water into the boiler.

But, aside from this, the evidence showed that the company was negligent in failing to put in a new water glass. There is testimony to the effect that the foreman for the company, in charge of this work, was notified several hours before the explosion occurred that the water glass had been broken, and that he promised to repair it, and there is nothing to show that a new water glass could not have been put in some time before the explosion and indeed before the drills commenced working.

It is true the sufficiency of the supply of water in the boiler could have been ascertained without the water glass by turning the water cocks, but the water glass was especially adapted for use by an unskilled man such as Moreland was. It furnished an ever-present and, under existing conditions, a reliable test of the water supply. That it was regarded as both useful and necessary is shown, in the first place, by the fact that the boiler was equipped with it, and, in the second place, by the fact that the foreman promised immediately when his attention was called to it, to have a new one put in. In addition to this several witnesses testified to the necessity of having a water glass when the operator was not an engineer.

Numerous criticisms are made of the instructions, but upon the whole we think they fairly submitted the questions at issue to the jury. In the instructions the jury were told, in substance, that if they believed from the evidence that the boiler was not reasonably safe on account of the failure to have it supplied with a water glass, or because it was defectively constructed, and that these conditions, or either of them, were known, or by the exercise of ordinary care could have been known to the defendant, the law was against it.

They were further told that it was the duty of Moreland to exercise care for his own safety, and that if they believed the explosion was caused by his negligence, they should find for the defendant.

It is argued that it was error to submit any issue concerning the failure to have a water glass, as there was no evidence that this failure contributed to the injuries resulting in the death of Moreland. But, under the evidence, we think it was the duty of the company to have had this boiler equipped with a water glass. It is true there is no direct evidence tending to show that the failure to have a water glass was the proximate cause of the explosion or to show that if the boiler had been equipped with a water glass the explosion would not have occurred. It is, however, a fair inference, in view of the fact that Moreland is dead and cannot speak for himself, that this water glass would have kept him well advised all the time of the condition of the water, and that if as a matter of fact low water was the cause of the explosion, although there is much evidence that it was not, this condition would not have existed if Moreland had had before him the water glass to keep him at all times informed as to the sufficiency of the supply of water.

Where machinery is equipped with more than one safety appliance, and one of these appliances is better adapted to use by unskilled persons than the other, it is the duty of the master to use reasonable care to keep all of the appliances in working order so that the servant may have all the protection that the conditions surrounding him reasonably permit. And the reasonable presumption is that an employe like Moreland would depend on the water glass more than on the water cocks.

It is also insisted that it was error to tell the jury, in effect, that if the useless condition of the water glass was known "to the agents or employes of the defendant," this was sufficient to bring notice of its condition to the company. And said that the notice should have been confined to some person having charge of the work or acting in the capacity of a foreman or vice-principal.

There are cases in which an instruction like the one given would be prejudicial, but this is not one of them, because the uncontradicted evidence is that notice of the broken water glass was brought directly to the attention of the foreman in ample time to have supplied a new glass before the explosion occurred.

It is further said that the instruction on the subject of contributory negligence was not sufficiently specific,

and that the jury should have been expressly instructed that if the explosion was caused by an insufficient supply of water, due to the negligence of Moreland, there could be no recovery.

The court might properly have instructed the jury as indicated, but the failure to do so was not, under the evidence, prejudical, because a great deal of evidence was introduced by the defendant tending to show that the explosion was due to low water caused by the negligence of Moreland, and they were told that if the explosion and resulting injury were caused by his negligence, there could be no recovery.

Other minor points are relied on for reversal, but after carefully considering the record and brief of counsel, we have reached the conclusion that upon the whole case no substantial error was committed to the prejudice of the appellant, and the judgment is affirmed.