Marlow SEARS et al., Appellants,

v.

Jesse L. (Jack) FROST'S ADM'R (Melvin Carter), Appellee.

Court of Appeals of Kentucky.

March 11, 1955.

Rehearing Denied June 24, 1955.

Redwine & Redwine, Winchester, Leslie W. Morris, Marion Rider, Frankfort, for appellants.

Hazelrigg & Cox, John Hopkins, R. Vincent Goodlett, Frankfort, R. L. Carson, Knoxville, Tenn., for appellee.

STANLEY, Commissioner.

The appeal is from a judgment for $25,000 damages for the death of Jesse L. Frost, nicknamed "Jack", caused by being struck by a truck belonging to the appel-

lants, Marlow Sears and others, partners doing business as Marlow Sears and Sons Lumber Company.

The accident occurred on state highway No. 151 near its junction with U. S. highway No. 60 on the afternoon of July 15, 1952. Frost, traveling northwardly, had a puncture in the left rear tire of his car. He stopped it with the right wheels over as far as possible on the shoulder of the road. This left about half its width on the pavement. About fifteen feet of paving remained clear for traffic. The road was straight in each direction for several hundred feet. Just about the time Frost and his companion, Robert Taylor, got out to change the wheel or tire, a state patrol car came along and stopped. An officer, Sergeant Pyles, told them they were in a "pretty dangerous place; the road is slippery." But said he, "They didn't seem to think they could get off the road without ruining their tire and tube, so I told them I would go down the road and come back and assist them and for one of them to go down the road and flag the traffic." Taylor went back about thirty feet. He saw the defendants' truck coming in the same direction, about 300 feet away. He waved it to slow down, and the truck did so. Taylor saw that the way was clear of traffic and motioned the driver to go on. He had to jump off the road out of the way of the truck. At that time Frost was directly behind his car engaged in jacking up the bumper, with his back toward the oncoming truck. It seems he was in a stooping or bending over position. He had not yet loosened the tire or wheel bolts. The truck driver ran on and struck Frost and the automobile. The man's back was badly mangled, and he died several hours later. He and his car were hit by the right front part of the truck as it was trying to clear them and pass on the left side.

Officer Pyles returned and arrived at the scene right away. He also testified that Frost was directly behind his car. The defendants' driver, Lloyd Dyer, told the officer that when Taylor flagged him, he was prepared to stop, but when Taylor signaled him to go on, he had cut his wheels to the left, but they did not "seem to take hold right" and he "could not avoid" striking the car.

Dyer's evidence on the trial is summarized: He was driving at 40 mph as he passed the police car and when he first saw the Frost car in front of him 100 or 150 feet away with Frost trying to put a jack under the bumper. (In a pretrial deposition, he placed the distance at "around 100 yards.") Taylor, who was about five feet from the car, stuck out his hand, and so he, Dyer, slowed down to five or ten mph; then Taylor, who was about 30 feet from him, jumped up on the bank. Taylor "looked around and motioned me on through. He hollowed, 'Look out for Jack.'" Dyer cut his wheels to the left; put the car into second gear; and "give it the gas to come out, and it was a-scooting toward the car. I hit my brakes but they didn't help the matter any and before I could ever get time to do anything about it, I was done into the car where it was too late to do anything." The truck had tandem or dual rear axles and wheels and was loaded with lumber.

The defendants showed that some 300 feet farther north on the same side of the road there was a place where the automobile might have gone and parked, and a graveled space almost directly across the road from where it did stop which was wide enough for the car to have been parked clear of the pavement. But the plaintiff's evidence is that this was not a suitable place to repair a left tire on the north bound car. As Frost and Taylor were from Tennessee, it is likely they did not know about the place farther on. At any rate, Frost had the approval of the highway patrolman to stay where he was.

I

We cannot accede to the appellants' argument that by stopping his car where he did and getting behind it the deceased as a matter of law assumed the risk of being hurt as that term is used in the sense of being contributorily negligent. See Mor-

rison & Conklin Construction Co., v. Cooper, Ky., 256 S.W.2d 505.

The statutes deny a motorist the right to stop or leave his car "upon the main traveled portion of a highway" unless the "vehicle * * * has been disabled" while on it "in such a manner and to such extent that it is impossible to avoid" doing so "or impracticable to remove it from the highway until repairs have been made". KRS 189.-450. It is true the statute has been construed as not giving an absolute right to leave in such a place a car which has sustained only a minor damage that does not interfere with its ready removal. Thus, in Burnett v. Yurt, Ky., 247 S.W.2d 227, the motorist was held to be negligent in leaving his car on the pavement when it was in good running order and only had a fender dented. But in that case and others we have held it to be a question for the jury when a stationary car in such a place was run into. Among other recent cases so holding are American Fidelity and Casualty Co. v. Patterson, Ky., 243 S.W.2d 472; Ashton v. Roop, Ky., 244 S.W.2d 727; Banner Transfer Co. v. Morse, Ky., 274 S.W.2d 380.

Of special application is Sweeney v. Schadler, Ky., 259 S.W.2d 680, 682, where a man, while wiping off the rear window of his automobile, which he had stopped partially on the highway, was struck by an overtaking car. We observed in the opinion that the position of the car was not the cause of the accident, but that the real question was whether the injured man was contributorily negligent in failing to exercise ordinary care for his own personal safety as a person on foot on the highway. Quoting and citing authorities, almost uniform, we held "that it is not contributory negligence as a matter of law for a motorist to stand upon the paved portion of the highway while engaged in making adjustments or repairs to his automobile, but that the question of his contributory negligence ordinarily is for the jury."

Even where one is a trespasser on private property and is seen in a place of danger, he is entitled to protection from wilful injury by the owner. That is a plain humanitarian or compassionate principle of justice. In the present case, the driver of the defendants' truck admitted having seen the man behind his car as he approached it and was being flagged down. It was for the jury to determine whether the deceased was negligent in being where he was on the road.

Nor can it be said that the defendants were excusable as a matter of law because the truck skidded or struck the automobile because of the slippery condition of the road. To relieve one of legal responsibility for this cause, it must have been the sole cause or the collision was unavoidable even though the driver was at the time exercising ordinary care and had his car under reasonable control. See Atlantic Greyhound Corp. v. Franklin, 301 Ky. 867, 192 S.W.2d 753; Whitt v. Farley, Ky., 1955, 275 S.W.2d 906. In the first place, the truck driver did not testify he skidded. His testimony quite clearly reveals that he did not have the truck under control as he approached the man behind the car just ahead of him. He tried to turn out and miss the automobile, but "I was done into the car where it was too late to do anything." The defendants' negligence is more apparent than was that of the plaintiff who ran into a disabled truck and was held to be contributorily negligent as a matter of law in the recent case of Banner Transfer Co. v. Morse, Ky., 274 S.W.2d 380.

The court properly overruled the defendants' motion for a peremptory instruction on either ground of non-proof of their driver's negligence or of proof of contributory negligence of the deceased.

II

The appellants argue the instruction which submitted the duties of their truck driver is erroneous. The instruction embraced the observance of duties of (a) exercising ordinary care in driving the truck, which included (b) reasonable control, (c) speed, (d) lookout, and (e) sounding horn if necessary. Appellants' argument is that there was no issue of fact as to any of these

questions because the driver admitted seeing the car and man ahead and giving no warning, and it was not denied he had slowed down and had his truck under control. If the argument be sound, then the court should have directed a verdict for the plaintiff, for it is further admitted the truck ran into the car and the man while he was leaning over. Really, the only issue in the case was in regard to the duty of ordinary care to have the truck under control, for violation of the other duties is indeed conceded.

■■ It is a universal rule that a party will not be heard to complain of an instruction which is as favorable or more favorable to him than that to which he was entitled, and an instruction which requires the jury to find an unnecessary fact in order to award a recovery to the plaintiff is not prejudicial to the defendant. In having these issues submitted to the jury, the appellants were certainly not injuriously affected. Hough & Spradlin Co. v. Moreland's Adm'x, 159 Ky. 722, 169 S.W. 467; Illinois Cent. R. Co. v. McGuire's Adm'r, 239 Ky. 11, 38 S.W.2d 913.

### III

The court was liberal in instructing the jury concerning negligence of the deceased man, all of which instructions were asked by the defendants. Three were given. One instruction excused the defendants from liability if the deceased's negligence was the direct and proximate cause of his injury and death, another if it was the sole cause, and another if it was contributory. All of these instructions are now vigorously criticized by the appellants. They particularly attack with vigor the instruction which predicated immunity from liability if the deceased's negligence was the direct and proximate cause instead of a contributing cause.

■ The appellants cannot be heard in their complaint respecting these instructions for the reason that they invited and procured whatever error there may be in them. The rule is universally accepted that a party cannot complain of an instruction

which he requested. There is no need for citation of authority for this elementary rule.

### IV

■ The instruction on the deceased's negligence as offered by the defendants specified as a fourth duty: "As a stationary pedestrian, to face traffic so as to observe approaching vehicles." This provision was stricken by the court and not given to the jury. It is sought to place the deceased in the category of a person walking along the highway and within the statute which requires such pedestrian to walk facing oncoming traffic. KRS 189.570(6); Saddler v. Parham, Ky., 249 S.W.2d 945. The statute refers only to pedestrians who are "walking on or along a highway," and requires that such one walk on his left side of the road. This was designed not for the protection of a motorist, but in order that a pedestrian may see cars approaching in his lane of traffic and keep out of the way as a matter of ordinary care. We think the duty, under the circumstances, was embraced in other specifications of care in the given instruction, namely, to exercise ordinary care for his own personal safety and to keep a lookout "in both directions for approaching vehicles and to remove himself from danger by their passing."

### V

On the plaintiff's request, the court instructed the jury concerning the purpose of admitting evidence of the deceased's life expectancy in the form published as Sec. 335, Stanley's Instructions to Juries. The appellants maintain the instruction is erroneous in that it offends the rule against abstract instructions and general dissertations on the law. This instruction had been refused by the trial court in Louisville & N. R. Co. v. Thompson's Adm'r, 217 Ky. 21, 288 S.W. 761, but not because of the form. As stated in note to the publication of this form, it was neither approved nor disapproved by this court. The court did not have occasion to pass on the form. It confined the opinion to holding it was error not to have given an instruction to the effect that the mortality table had been ad-

mitted for the purpose of showing the probable duration of life of a healthy person and that the jury should consider it in connection with other evidence as to the probable duration of life of the man who had been killed.

In the main, the form is in accord with the general description of a proper instruction outlined in Illinois Cent. R. Co. v. Houchins, 121 Ky. 526, 89 S.W. 530, 28 K.L.R. 499, 1 L.R.A.,N.S., 375, 123 Am.St. Rep. 205. There is no occasion here to pass on the form of the instruction.

▇▇▇ Abstract instructions which correctly state legal principles or propositions in a general way are not in themselves iniquitous. The reason for avoiding them is that they have a tendency to confuse or mislead the jury. Ordinarily, it is deemed simpler to make concrete or specific application of the law to the particular facts or conditions in the case. Instructing in the abstract form is sometimes a practical necessity, as in defining or distinguishing terms, and is seldom deemed prejudicial. Conceding arguendo that the first and introductory part of the instruction is abstract in that it is a general, though a correct statement, and was not required or desirable, the appellants are met with the certain view that the instruction was not prejudicial. Stein v. Louisville Water Co., Ky., 249 S.W.2d 750; Cain v. Stevens, Ky., 274 S.W.2d 480. This instruction as to the life expectancy of the deceased, obviously, related to the matter of the amount of damages, if any were to be awarded. There is no claim, nor could there well be, that the verdict is excessive. It is apparent the instruction did not mislead the jury or injuriously affect the appellants' material or substantial rights.

## VI

Finally, the appellants contend there was prejudicial argument by the appellee's attorney in that he misquoted testimony of the state patrolman. The attorney had challenged the accuracy of a statement by the appellants' lawyer in his argument that the officer had ordered the deceased off the highway, and in the course of paraphrasing the conversation between the officer and the deceased stated that the officer had said, "You can stay here." Objection was interposed with the charge that the officer had not said that. Without ruling on the objection, the court stated his recollection was that the officer had said he would come back and help the men repair the tire. The court was right. Then appellee's lawyer proceeded and merely repeated his insistent denial that the officer had ordered the car moved.

Portions of the officer's testimony are given in the first part of this opinion. He also testified, "I told him it was a dangerous spot, but I did not order him to move it." On cross-examination, he testified he "suggested" that the car be moved.

▇▇▇ Both lawyers slightly stretched the letter of the language of the witness, but we do not think either one of them stretched it beyond the limits of legitimate advocacy. They but stated their respective interpretations of the evidence. At any rate, the deviation was provoked by deviation. Improper argument made in response to improper argument ordinarily is not ground for reversal of a judgment. Warfield Natural Gas Co. v. Clark's Adm'x, 257 Ky. 724, 79 S.W.2d 21, 97 A.L.R. 971; Guyan Chevrolet Co. v. Dillow, 264 Ky. 812, 95 S.W.2d 796. As every argument is different, each must receive its own judgment. Here we find the claim of prejudicial argument not sustained.

Perceiving no prejudicial error in the trial, the judgment is

Affirmed.