**Myrna L. THARP, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 1997–SC–1063–MR.**

Supreme Court of Kentucky.

Dec. 21, 2000.

Rehearing Denied April 26, 2001.

Joseph Vincent Aprile, II, Assistant Public Advocate, Frankfort, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Ian G. Sonego, Michael Harned, Assistant Attorneys General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

On January 11, 1997, Elaina Curtis, age ten months, died from a ruptured spleen which allegedly resulted from physical abuse inflicted by her stepfather, Kenneth Tharp. Medical examinations of the child's body also revealed severe bruises of the legs, abdomen, chest, forehead, left eye, scalp and the back of the head. Some of the bruises were estimated to be seven days old or older. There were also fractures of the left ulnar and of another bone just above the ankle joint, the latter estimated to be seven to eight days old and the former estimated to be a month old. A radiologist opined that the fractures were caused by two acts of deliberate child abuse occurring on two separate occasions.

Kenneth Tharp and his wife, Appellant Myrna Tharp, the child's mother, were indicted by a McCracken County Grand Jury on charges of wanton murder and criminal abuse in the first degree. Kenneth was also indicted as a persistent felony offender in the first degree. A motion for separate trials was granted, RCr 9.16, and Appellant's case was tried first. Appellant testified that she had never witnessed her husband abusing Elaina and had never observed anything seriously wrong with the child until shortly before her death. However, she had previously given statements to the police in which she admitted (1) that she had observed her husband beat the child with his fists on occasions prior to January 11, 1997; (2) that she saw her husband strike Elaina with his fists on January 11, 1997, knocking the child from side-to-side, and that she told him to stop hitting the child, but then left the room and closed the door behind her, leaving the child alone with her husband; and (3) that later that same day, she saw her husband throw Elaina to the floor, but thought he was just "playing" with the child. Shortly thereafter, Appellant observed blood in Elaina's diaper and that she was having difficulty breathing. An ambulance was called, but efforts to save the child's life were unsuccessful.

Appellant was convicted of wanton murder by complicity and of criminal abuse in the second degree, and was sentenced to a total of twenty-seven years in the peniten-

tiary. She appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), alleging (1) that her conviction of wanton murder by complicity violates the fair warning aspect of the Ex Post Facto clauses of the United States and Kentucky constitutions; (2) that the jury was improperly instructed on the legal requirements of guilt by complicity; and (3) various errors with respect to the admission or exclusion of evidence offered at trial.

## I. EX POST FACTO.

There was no evidence that Appellant killed Elaina Curtis or that she aided, abetted, encouraged, or otherwise actively participated in the conduct which resulted in Elaina's death. Her criminal liability is predicated upon the violation of her legal duty to make a proper effort to protect her child from her husband's assaults. KRS 502.020(2)(c).

■ KRS 502.020 describes two separate and distinct theories under which a person can be found guilty by complicity, *i.e.,* "complicity to the act" under subsection (1) of the statute, which applies when the principal actor's *conduct* constitutes the criminal offense, and "complicity to the result" under subsection (2) of the statute, which applies when the *result* of the principal's conduct constitutes the criminal offense, *viz:*

(1) A person is guilty of an offense committed by another person when, *with the intention of promoting or facilitating the commission of the offense,* he:

 (a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or

 (b) Aids, counsels, or attempts to aid such person in planning or committing the offense; or

 (c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.

(2) When causing a particular result is an element of an offense, a person who *acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense* is guilty of that offense when he:

 (a) Solicits or engages in a conspiracy with another person to engage in the conduct causing such result; or

 (b) Aids, counsels, or attempts to aid another person in planning, or engaging in the conduct causing such result; or

 (c) Having a legal duty to prevent the conduct causing the result, fails to make a proper effort to do so.

(Emphasis added.)

■ The primary distinction between these two statutory theories of accomplice liability is that a person can be guilty of "complicity to the act" under KRS 502.020(1) only if he/she possesses the *intent* that the principal actor commit the criminal act. However, a person can be guilty of "complicity to the result" under KRS 502.020(2) without the intent that the principal's act cause the criminal result, but with a state of mind which equates with "the kind of culpability with respect to the result that is sufficient for the commission of the offense," whether intent, recklessness, wantonness, or aggravated wantonness. KRS 502.020 (1974 Official Commentary); R. Lawson and W. Fortune, *Kentucky Criminal Law* § 3–3(b)(3), at 106, § 3–3(c)(2), at 114 (LEXIS 1998). The most common examples of offenses having a prohibited result are homicide, with the death of another as the prohibited result, and assault, with the bodily injury

of another as the prohibited result. KRS 502.020 (1974 Official Commentary).

■ In the context of criminal homicide, a defendant can be found guilty by complicity of an intentional homicide (intentional murder or manslaughter in the first degree) under KRS 502.020(1) only if there is evidence that he/she either actively participated[1] in the actions of the principal, or failed in a legal duty to prevent those actions, *with the intent* that the victim's death (or serious physical injury per KRS 507.030(1)(a)) would result. However, a defendant can be found guilty of complicity to an unintentional homicide under KRS 502.020(2) if there is evidence that he/she either actively participated in the actions of the principal, or failed in a legal duty to prevent those actions, *without the intent* that those actions would result in the victim's death, but with recklessness, *i.e.*, failure to perceive a substantial and unjustifiable risk that death would result, KRS 501.020(4), supporting a conviction of reckless homicide by complicity, KRS 507.050; wantonness, *i.e.*, an awareness of and conscious disregard of a substantial and unjustifiable risk of that result, KRS 501.020(3), supporting a conviction of manslaughter in the second degree by complicity, KRS 507.040;[2] or aggravated wantonness, *i.e.*, wantonness creating a grave risk of death under circumstances manifesting an extreme indifference to human life, supporting a conviction of wanton murder by complicity, KRS 507.020(1)(b).

In *Knox v. Commonwealth,* Ky., 735 S.W.2d 711 (1987), the mother was convicted of first-degree rape by complicity for failing to make a proper effort to prevent her husband from raping her child, *i.e.*, complicity to a prohibited act. KRS 502.020(1)(c). In reversing the mother's conviction, we held that there was no statutory or common law duty in Kentucky requiring the mother "to prevent the commission of the rape," *Knox, supra,* at 711; thus, there was no basis for application of the "legal duty" theory enunciated in KRS 502.020(1)(c). We specifically rejected an argument that KRS 199.335, the then-existing statute requiring the reporting of child abuse, created a legal duty to prevent child abuse; and further held that any legislative intent embodied in the newly-enacted criminal abuse statutes, KRS 508.100, *et seq.*, could not be considered because the offense in *Knox* occurred prior to the enactment of those statutes.

In *Lane v. Commonwealth,* Ky., 956 S.W.2d 874 (1997), *cert. denied,* 522 U.S. 1123, 118 S.Ct. 1067, 140 L.Ed.2d 127 (1998), the mother was convicted of first-degree assault by complicity for failing to make a proper effort to prevent her domestic companion from inflicting serious physical injuries upon her child, *i.e.*, complicity to a prohibited result. KRS 502.020(2)(c). In affirming the mother's conviction, we held that Kentucky law imposes a legal duty upon a parent to make a proper effort to protect his/her child from harm at the hands of another, thus trig-

---

1. "The Supreme Court has described the requirement as one of 'active participation' [*citing Skinner v. Commonwealth,* Ky., 864 S.W.2d 290, 300 (1993) and *Gilbert v. Commonwealth,* Ky., 838 S.W.2d 376, 380 (1991)] in the commission of an offense, a description widely embraced by courts in other jurisdictions." Lawson and Fortune, *supra,* § 3-3(b)(4), at 110 (footnote omitted).

2. Pursuant to the definitions of wantonly and recklessly, KRS 501.020(3) and (4), manslaughter in the second degree or reckless homicide is committed only if the failure to perceive or the conscious disregard of the risk of death to the victim constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

gering the "legal duty" aspects of KRS 502.020(1)(c) and (2)(c). *Lane* expressly overruled *Knox* in that respect. *Lane, supra,* at 876 (plurality opinion), 881 (concurring opinion). Appellant's indictment and conviction of wanton murder by complicity was predicated upon the holding in *Lane.* Elaina Curtis was killed on January 11, 1997. *Lane* was not rendered until June 19, 1997. Thus, Appellant asserts that her conviction violates the "fair warning" aspect of the Ex Post Facto Clause. U.S. Const. art. I, § 10; Ky. Const. § 19(1).

■■■ An ex post facto violation occurs in the context of a judicial decision "[w]hen a[n] ... unforeseeable state court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect [being] to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime." *Bouie v. City of Columbia,* 378 U.S. 347, 354–55, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1964).[3] "[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier,* 520 U.S. 259, 266, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997).[4] "[T]he touchstone [for determining fair warning] is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that

the defendant's conduct was criminal." *Id.* at 267, 117 S.Ct. at 1225. However, no more is required than "that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose v. Locke,* 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975). Applying these principles to the case *sub judice,* we conclude that at the time Appellant committed the offense of wanton murder by complicity, she had "fair warning" that her failure to make a proper effort to protect her child from her husband's assaults violated her "legal duty" to do so, as required by KRS 502.020(2)(c).

*Knox v. Commonwealth, supra,* involved a conviction of "complicity to the act" of rape, KRS 502.020(1)(c), and there was some evidence of the required element of intent, *i.e.,* that the child pleaded with her mother to protect her from the stepfather's sexual assaults, but the mother refused. *Gilbert v. Commonwealth,* Ky., 838 S.W.2d 376 (1991). In *Lane v. Commonwealth, supra,* there was no evidence that the mother intended for either the assault or the resulting injuries to occur. Thus, her liability could have been predicated only upon the theory of "complicity to the result" embodied in KRS 502.020(2)(c) by failing to perform her legal duty to make a proper effort to prevent the assault (the conduct causing the result), accompanied by a state of mind of aggravated wantonness per KRS 508.010(1)(b) with respect to

**3.** *Bouie* involved "conduct clearly outside the scope of the statute as written [which was] retroactively brought within it by an act of judicial construction." *Bouie,* 378 U.S. at 352, 84 S.Ct. at 1702. The defendants were charged with criminal trespass when they refused to leave a retail drug store at which they were conducting a sit-in demonstration. The South Carolina trespass statute, S.C.Code § 16–386 (1952), prohibited "[e]ntry on lands of another after notice prohibiting same." (Emphasis added.) The South Carolina Su-

preme Court construed the statute to cover not only the act of entry on the premises of another after receiving notice not to enter, but also the act of *remaining* on the premises of another after receiving notice to leave. *Bouie,* 378 U.S. at 350, 84 S.Ct. at 1700–01.

**4.** The issue in *Lanier* was whether alleged sexual assaults fell within the proscriptive language of 18 U.S.C. § 242, a civil rights statute.

the result of that conduct.[5] *Lane, supra,* at 882 (Cooper, J., concurring).

However, the different results in *Knox* and *Lane* were not due to the fact that *Knox* involved a "complicity to the act," which requires intent, whereas *Lane* involved a "complicity to the result," which does not. The different result in *Lane* emanated from changes in the law which occurred in the interim between our 1987 decision in *Knox* and our 1997 decision in *Lane.* The plurality opinion in *Lane* (three justices) relied primarily upon the legislative intent expressed in (1) the enactment of the criminal abuse statutes, KRS 508.100, *et seq.,* which had been specifically disregarded in *Knox* because they were enacted after the commission of the offense in that case, and (2) the enactment of KRS 620.010,[6] which contains the following statement of legislative purpose, *viz:*

> Children have certain fundamental rights which *must be protected* and preserved, including but not limited to ... the right to be free from physical, sexual or emotional injury or exploitation.... (Emphasis added.)

No similar language was contained in former KRS 199.335, the reporting statute which was interpreted in *Knox* and which was subsequently repealed.[7]

The concurring opinion in *Lane* (two justices) relied primarily upon the intervening development in our common law of the concept of a "special relationship" imposing a legal duty upon one having custody of another to protect that person from harm, *cf. Fryman v. Harrison,* Ky., 896 S.W.2d 908 (1995), *Ashby v. City of Louisville,* Ky.App., 841 S.W.2d 184 (1992); and the application of that principle to the parent/child relationship in other jurisdictions, even in circumstances where the parent, although aware of the abuse being perpetrated upon the child by another, was not present when the fatal or seriously injurious assault occurred. *E.g., People v. Peters,* 224 Ill.App.3d 180, 166 Ill.Dec. 511, 586 N.E.2d 469 (1991).

Thus, Appellant had "fair warning" of our decision in *Lane,* both in *Knox,* itself, (that a different result might obtain if the offense occurred after the enactment of KRS 508.100, *et seq.*) and by changes in both the statutory and common law of Kentucky, as well as judicial interpretations by courts of other states, which occurred subsequent to *Knox. See generally United States v. Lanier, supra.* Even more significant, however, is the fact that *Lane* was before this Court on a grant of discretionary review of a published opinion[8] of our Court of Appeals, which also held that *Knox* had been abrogated by subsequent changes in Kentucky law. The Court of Appeals' opinion in *Lane* was rendered on October 6, 1995, five months before Elaina Curtis was *born* and fifteen months before she was brutally slain.

## II. COMPLICITY INSTRUCTIONS.

The complicity instructions given by the trial court were as follows:

### INSTRUCTION NO. 3

You will find the Defendant guilty of Complicity to Murder under this In-

---

5. In *Lane,* the appellant did not assert error with respect to the fact that she was charged under KRS 502.020(1)(c) rather than KRS 502.020(2)(c). She only claimed that she had no legal duty to protect her child from serious physical injuries inflicted by her domestic companion.

6. 1986 Ky. Acts ch. 423 § 62 (eff. July 1, 1987).

7. 1986 Ky. Acts ch. 423 § 198 (eff. July 1, 1987).

8. 42 K.L.S. 11, at 4 (October 27, 1995).

struction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about January 11, 1997 and before the finding of the Indictment herein, Kenneth Tharp killed Elaina Curtis by beating her with his fists;

B. That the Defendant, Myrna Tharp, failed to make a proper effort to prevent Kenneth Tharp from beating Elaina Curtis with his fists;

AND

C. That in so doing, the Defendant wantonly engaged in conduct which created a grave risk of death to another and the Defendant's conduct thereby caused the death of Elaina Curtis under circumstances manifesting an extreme indifference to human life.

### INSTRUCTION NO. 4

If you do not find the Defendant, Myrna Tharp, guilty under Instruction No. 3, you will find the Defendant, Myrna Tharp, guilty of Complicity to Second–Degree Manslaughter under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about January 11, 1997 and before the finding of the Indictment herein, Kenneth Tharp killed Elaina Curtis by beating her with his fists;

B. That the Defendant, Myrna Tharp, failed to make a proper effort to prevent Kenneth Tharp from beating Elaina Curtis with his fists;

AND

C. That in so doing, the Defendant was acting wantonly as that term is defined in Instruction No. 2.

### INSTRUCTION NO. 5

If you do not find the Defendant, Myrna Tharp, guilty under Instruction No. 3 or Instruction No. 4, you will find the Defendant, Myrna Tharp, guilty of Complicity to Reckless Homicide under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about January 11, 1997, and before the finding of the Indictment herein, Kenneth Tharp killed Elaina Curtis by beating her with his fists;

B. That the Defendant, Myrna Tharp, failed to make a proper effort to prevent Kenneth Tharp from beating Elaina Curtis with his fists;

AND

C. That in so doing, the Defendant was acting recklessly as that term is defined in Instruction No. 2.

Instruction No. 2 included the statutory definitions of "wantonly," KRS 501.020(3), and "recklessly," KRS 501.020(4), and defined complicity to mean "that a person is guilty of an offense committed by another person when, having a legal duty to prevent the conduct causing the result[,] fails to make a proper effort to do so."

Appellant first asserts that the trial judge's definition of complicity was improper because KRS 502.020(2) does not specifically say that a defendant "is guilty of an offense committed by another person" if the defendant fails in his duty to make a proper effort to prevent the other person's conduct. In fact, inclusion of any definition of complicity in the instructions was surplusage, since the substantive instructions embodied the essentials of the definition. Nevertheless, we note that the title of KRS 502.020 is "Liability for conduct of another—Complicity;" that subsection (2)(c) provides that a person "*is guilty*

*of that offense* when he ... [h]aving a legal duty to prevent the conduct causing the result, fails to make a proper effort to do so" (emphasis added); and that the 1974 Official Commentary to KRS 502.020 provides that "[t]he purpose of subsection (2) is to make special provisions for *complicity in an offense* which has a prohibited result as an essential element." (Emphasis added.)

 Second, Appellant argues that the instructions erroneously failed to require the jury to determine the mental state of Kenneth Tharp at the time he killed Elaina Curtis, which Appellant asserts is an essential element of her guilt by complicity. The gravamen of this argument is that a condition precedent to a conviction of an offense by complicity is a finding by the jury that the principal actor is equally guilty of the same offense. Not so. The principal actor's mental state with respect to his own conduct, or the degree of his criminal liability, is largely immaterial to the criminal liability of an accomplice or the degree thereof. As noted in *Springer v. Commonwealth*, Ky., 998 S.W.2d 439, 453 (1999), the common law generally held that an aider or abettor could not be convicted if the principal was acquitted. *E.g., Rutland v. Commonwealth*, Ky., 590 S.W.2d 682 (1979). However, even in the pre-penal code era, the degree of an accomplice's liability was determined by his or her own *mens rea* and not that of the principal.

> If one commits a crime and another is actually present aiding, abetting, assisting, or encouraging its commission, the latter thereby becomes a participant, a principal in the second degree, and his culpability is determined by his motives. . . .

*Fuson v. Commonwealth,* 199 Ky. 804, 251 S.W. 995, 997 (1923).

That proposition was codified in KRS 502.030(1):

> In any prosecution for an offense in which the criminal liability of the accused is based upon the conduct of another person pursuant to KRS 502.010 and 502.020, it is no defense that:
>
> (1) Such other person has not been prosecuted for or convicted of any offense based on the conduct in question, or has previously been acquitted thereof, or has been convicted of a different offense. . . .

Although there was no common law equivalent to KRS 502.020(2)(c), it is obvious that KRS 502.030(1) applies as well to one whose guilt by complicity is premised upon a failure to perform a legal duty to prevent conduct as to one whose guilt is premised upon active participation in that conduct. And if an accomplice can be convicted despite the acquittal of the principal, it follows that the degree of the offense of which an accomplice is convicted does not depend upon the degree of which the principal is convicted. KRS 502.020(2) is modeled after what became Section 2.06(4) of the Model Penal Code.[9] The Official Comment to that section includes the following:

> Subsection (4) makes it clear that complicity in conduct causing a particular criminal result entails accountability for that result so long as the accomplice is personally culpable with respect to the result to the extent demanded by the definition of the crime. Thus, if the accomplice recklessly endangers life by rendering assistance to another, he can be convicted of manslaughter if a death results, even though the principal actor's liability is at a different level. In effect,

---

**9.** Model Penal Code § 2.06(4) (Proposed Official Draft 1962).

therefore, the homicidal act is attributed to both participants, with the liability of each measured by his own degree of culpability toward the result.

*Model Penal Code* Pt. I § 2.06 Comment, at 321 (1985) (footnote omitted). It has been asserted that the purpose of Section 2.06(4) is to ameliorate the harshest aspects of the so-called "natural and probable consequence" doctrine, under which an accomplice is held criminally liable for a crime which he/she *did not* intend to aid or assist so long as the resultant crime was a natural and probable consequence of the crime he/she *did* intend to aid or assist.[10] A. Rogers, *Accomplice Liability for Unintentional Crimes; Remaining within the Constraints of Intent,* 31 Loy. L.A. L.Rev. 1351, 1360, 1362 (1998). This view of the purpose of Section 2.06(4) is supported by the following statement in the Official Comment to Section 2.06:

> One who solicits an end, or aids or agrees to aid in its achievement, is an accomplice in whatever means may be employed, insofar as they constitute or commit an offense fairly envisaged in the purposes of the association. But when a wholly different crime has been committed, thus involving conduct not within the conscious objectives of the accomplice, he is not liable for it unless the case falls within the specific terms of Subsection (4).

*Model Penal Code* Pt. I § 2.06 Comment, at 311 (1985).

Thus, it is immaterial to Appellant's criminal liability or the degree thereof whether Kenneth Tharp is ever convicted of criminal homicide for causing the death of Elaina Curtis, or, if so, of which degree of homicide he is convicted. To convict

Appellant of wanton murder, the jury was only required to believe beyond a reasonable doubt that (1) Kenneth Tharp's conduct resulted in Elaina Curtis's death; (2) Appellant failed to make a proper effort to prevent that conduct; and (3) in so doing, Appellant, under circumstances amounting to aggravated wantonness, disregarded a substantial and unjustifiable risk that such conduct would result in Elaina Curtis's death. The instructions accurately described the elements of the offense of which Appellant was convicted.

■ Finally, Appellant complains that the instructions were deficient in failing to require a finding that Appellant was "physically capable of performing" her duty to prevent the conduct causing her child's death. KRS 501.030(1) provides:

> A person is not guilty of a criminal offense unless:
>
> (1) He has engaged in conduct which includes a voluntary act or the omission to perform a duty which the law imposes upon him and which he is physically capable of performing....

■ It is unclear whether Appellant's argument in this regard is a claim that she was physically unable to prevent Kenneth Tharp from killing Elaina Curtis (a proposition which she did not assert at trial). If so, the concurring opinion in *Lane v. Commonwealth, supra,* points out that KRS 502.020(2)(c) does not anticipate courage or heroism, but requires only a proper (read "reasonable") effort to protect the child from harm. *Lane, supra,* at 881 (Cooper, J., concurring). This requirement of a "proper" effort gives the jury leeway to consider any physical infirmities which

---

**10.** *E.g.,* Kan. Stat. Ann. § 21–3205(2); Me. Rev.Stat. Ann. tit. 17–A, § 57(3)A; Minn.Stat. Ann. § 609.05(2); *People v. Prettyman,* 14 Cal.4th 248, 58 Cal.Rptr.2d 827, 926 P.2d 1013 (1996); *Chance v. State,* 685 A.2d 351 (Del.1996); *State v. Bowman,* 588 A.2d 728, 731 (Me.1991).

might mitigate a parent's failure to protect his/her child from harm.

Regardless, the 1974 Official Commentary to KRS 501.030(1) explains that the purpose of that statute is "to remove from the field of criminal liability all social harms resulting from involuntary acts as well as those resulting from failures to perform moral, yet non-legal, duties." Professors Lawson and Fortune tell us that "[t]he essence of subsection (1) is that there can be no crime without an act, though it is clear that failure to act under a legal duty satisfies the requirement." Lawson and Fortune, *supra*, § 2–1(a), at 39. The instructions did not predicate Appellant's guilt in this case upon an involuntary act or upon the failure to perform a non-legal duty, but upon her failure to act while under a legal duty to do so. KRS 501.030(1) has no application to this case.

■ We note that the trial instructions did not include as an element of the offense "[t]hat the Defendant, Myrna Tharp, was the parent and custodian of Elaina Curtis," an essential element of complicity liability under KRS 502.020(2)(c). That issue was raised neither at trial nor in the briefs, presumably because Appellant did not deny being Elaina's mother and legal custodian. Although it was error to omit this element from the complicity instructions, the omission does not rise to the level of palpable error. RCr 10.26.

### III. EVIDENCE ISSUES.

None of the evidence issues of which Appellant complains were preserved for appellate review. Nor does a substantial possibility exist that the result would have been different if a successful objection had been interposed. RCr 10.26; *Partin v. Commonwealth*, Ky., 918 S.W.2d 219, 224 (1996).

■ *A.* Appellant complains that the emergency room records of the University of Kentucky Medical Center and Western Baptist Hospital pertaining to prior treatment of Elaina Curtis were introduced into evidence without being furnished to her before trial. If this is an assertion of a "discovery violation," the simple answer is that the Commonwealth's attorney filed notice in the record of his intent to introduce these records and that they were available for review and copying. Appellant then asserts that the records do not affirmatively reflect findings of the extent of bruising and the fractures which were discovered post mortem, thus they belie the Commonwealth's attorney's statement during closing argument that Appellant "must have noticed the bruises." If this is an assertion of "improper closing argument," there was ample evidence from other witnesses to support that argument. Regardless, nothing about this claim of error implicates the Kentucky Rules of Evidence.

■ *B.* Appellant complains of the trial court's failure to conduct *sua sponte* a "*Daubert* hearing," *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), before permitting the assistant state medical examiner to render opinions as to the ages of the child's bruises based upon their coloration. In support of this claim of error, Appellant cites passages from several medical journal articles which question the accuracy of such determinations. Presumably, the assistant medical examiner would have defended her opinions if challenged to do so and the trial judge's ruling as to admissibility is far from a foregone conclusion. Although we find no reported Kentucky cases addressing this issue, such testimony has been routinely admitted in other jurisdictions. *E.g., Clausen v. State*, 50 Ark.App. 149, 901 S.W.2d 35, 36 (1995);

*In Interest of D.C.N.K.*, 232 Ga.App. 85, 501 S.E.2d 268, 269–70 (1998); *State v. Carr*, 265 Kan. 608, 963 P.2d 421, 426 (1998); *State v. Probst*, 623 So.2d 79, 83 (La.Ct.App.1993); *Commonwealth v. Lazarovich*, 28 Mass.App.Ct. 147, 547 N.E.2d 940, 943 (1989); *State v. Loss*, 295 Minn. 271, 204 N.W.2d 404, 407 (1973); *State v. Candela*, 929 S.W.2d 852, 870 (Mo.Ct.App. 1996); *State v. Phillips*, 74 Ohio St.3d 72, 656 N.E.2d 643, 654 (1995), *cert. denied*, 517 U.S. 1213, 116 S.Ct. 1835, 134 L.Ed.2d 938 (1996); *State v. Orelup*, 492 N.W.2d 101, 103 (S.D.1992); *O'Neill v. State*, 681 S.W.2d 663, 669 (Tex.App.1984). We decline to speculate on the outcome of an unrequested *Daubert* hearing, or to hold that the failure to conduct such a hearing *sua sponte* constitutes palpable error. We would further note that there was ample other evidence of prior physical abuse of Elaina Curtis, including the radiologist's testimony as to the age of her bone fractures.

■ **C.** Along the same lines, Appellant complains of the trial court's failure to conduct *sua sponte* a *Daubert* hearing before permitting Dr. Smock to testify regarding "pattern injuries." Dr. Smock testified that he had received specialized training with respect to pattern injuries and that this method of determining the cause of injuries is generally accepted in the scientific community. This testimony satisfied the pre-*Daubert* "*Frye* test," *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923), and we have expressed doubt that evidence admissible under *Frye* would be inadmissible under *Daubert*. *Johnson v. Commonwealth*, Ky., 12 S.W.3d 258, 262 (1999) (*citing State v. Coon*, 974 P.2d 386, 398 (Alaska 1999)). We find no palpable error in the failure to hold an unrequested *Daubert* hearing with respect to Dr. Smock's testimony.

■ **D.** Appellant complains that the investigating officer, Detective Carroll, testified that (1) "it was obvious to us that we were investigating a homicide;" (2) "I knew it had to be one of the parents;" (3) "it was obvious that [Appellant] was not telling the truth [when she gave one of her five different statements to the police];" and (4) "I don't think throwing a baby on the floor is playing." Appellant argues that each of these statements violates the so-called "ultimate issue rule." Suffice it to say that we abandoned that rule in *Stringer v. Commonwealth*, Ky., 956 S.W.2d 883, 891 (1997), *cert. denied*, 523 U.S. 1052, 118 S.Ct. 1374, 140 L.Ed.2d 522 (1998), and have since held that *Stringer* can be applied retrospectively because it only affects a rule of evidence, which is procedural, not substantive, in nature. *Commonwealth v. Alexander*, Ky., 5 S.W.3d 104, 106 (1999). Regardless, none of Detective Carroll's statements rise to the level of palpable error. (1) All of the medical evidence indicated that the child died of a homicide, not of natural causes or mere negligence; (2) Appellant never posited that anyone except her husband injured or killed her child; (3) Appellant changed her story several times during her five statements to the police and changed it again at trial, thus, the statement that she was not telling the truth in one of her prior statements was but a truism which conformed to her own testimony; and (4) no one (except, apparently, Appellant) could seriously argue that throwing an infant to the floor constitutes "playing with the baby."

■ **E.** The trial judge precluded Appellant's stepfather from answering the following question: "Do you have an opinion as to whether or not Myrna is of a character that would permit that [abuse of her child] to happen?" We find no palpable error in the trial court's ruling. In the

first place, the evidence sought to be elicited was more akin to "profile" evidence than character evidence. *Pendleton v. Commonwealth,* Ky., 685 S.W.2d 549 (1985). In the second place, in the absence of an avowal, we have no way of knowing the witness's answer, thus, whether Appellant was prejudiced by its suppression.

Accordingly, the judgments of conviction and the sentences imposed by the McCracken Circuit Court are affirmed.

LAMBERT, C.J.; GRAVES, STUMBO and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs by separate opinion with JOHNSTONE, J., joining that concurring opinion.

KELLER, Justice, concurring.

The majority opinion neglects to mention that Tharp made no objection at trial to the form of any of the trial court's complicity to homicide instructions. In fact, the only objection made by Tharp in the trial court to any of the jury instructions was a "general objection" that the trial court should not instruct the jury regarding any offense because the evidence did not justify submission of this

indictment to the jury. The appellant, therefore, did not properly preserve for review by this Court *any* alleged errors with respect to the trial court's complicity to murder instructions.[1] Because I do not believe the flaws in the trial court's complicity to murder instruction warrant relief as palpable error under RCr 10.26, I concur in the result reached by the majority. I write separately, however, because, unlike the majority, I believe the trial court's separate complicity definition found in Instruction No. 2 was not only unnecessary, but also erroneous.

I agree with the majority opinion's statement that "inclusion of any definition of complicity in the instructions was surplusage, since the substantive instructions embodied the essentials of the definition." In my opinion, however, this Court should caution the trial courts of the Commonwealth of the risks of abstractly defining an offense separately within the jury instructions.[2] Without question, trial courts may simplify their instructions by separately defining certain terms (such as the culpable mental states) which appear throughout the instructions relating to the offenses themselves.[3] Trial courts need

---

**1.** *See* RCr 9.54(2):

> No party may assign as error the giving or the failure to give an instruction unless the party's position *has been fairly and adequately presented to the trial judge* by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, *stating specifically the matter to which the party objects and the ground or grounds of the objection.*

*Id. See also Davis v. Commonwealth,* Ky., 967 S.W.2d 574, 580–581 (1998) ("[I]mmediately prior to the formal reading of the instructions to the jury, Davis's attorney advised the judge that he wished to register a 'general objection to the instructions tendered by the Commonwealth.' He did not specify the reason for his objection .... [H]aving failed to specifically object to that portion of the instruction of which he now complains, Davis failed to fair-

ly and adequately present his position to the trial court and thereby preserve the issue for review." *Id.*).

**2.** *See Ford Motor Co. v. Fulkerson,* Ky., 812 S.W.2d 119, 122 (1991) ("Unlike the many jurisdictions that use pattern instructions, and otherwise explain the law of the case to the jury, the practice in Kentucky abjures the abstract and requires the trial court, applying (rather than stating) the underlying legal principles, to frame the dispositive issue." *Id.*); *Taylor v. Commonwealth,* 281 Ky. 442, 136 S.W.2d 544, 545 (1940) ("Instructions not predicated on the facts of the case—however accurate their statement of law in the abstract—should not be given." *Id.*).

**3.** *See, Sears v. Frost's Adm'r,* Ky., 279 S.W.2d 776, 781 (1955) ("Instructing in the abstract form is sometimes a practical necessity, as in

not, however, separately define a offense in the abstract when the elements of the offense are set out elsewhere in the instructions. If the abstract definition of the offense is identical to the instruction regarding the offense, the definition serves *no purpose*. If the abstract definition differs from the instruction, as is the case here, the definition only risks jury confusion and invites error.[4]

I cannot agree with the majority opinion's defense of the language of the separate complicity definition, however, because that definition improperly commingles KRS 502.020(2)(c) and KRS 502.020(1)(c):

> (c) "Complicity"—Means that a person is guilty of an offense committed by another person when, having a legal duty to prevent the conduct causing the result fails to make a proper effort to do so.

I find this definition erroneous in that it incorrectly implies that KRS 502.020(2) liability derives from the liability of the principal offender. Simply put, a defendant found guilty of complicity to a crime pursuant to KRS 502.020(2)(c) is *not* "guilty of an offense committed by another person." Although the factual background to complicity liability under KRS 502.020(2) will frequently involve the commission of a crime by another party, KRS 502.020(2) liability stems exclusively from the defendant's own mental state and own actions or omissions with respect to the result of the other party's conduct.[5] Under KRS 502.020(2), a defendant can be liable for complicity in a crime even if the other party who causes the result upon which the defendant's liability is premised acts with a mental state which constitutes a different offense entirely.[6] Accordingly,

---

defining or distinguishing terms, and is seldom deemed prejudicial." *Id.*).

4. *See, Ruehl v. Houchin,* Ky., 387 S.W.2d 597, 600 (1965) ("'Abstract instructions which clearly state legal principles in a general way are not in themselves iniquitous. Although they are improper and technically erroneous, the giving of such instructions is not generally regarded as prejudicial error. They may be erroneous, however, if they appear to have been misleading or the statements were inapplicable to the issues in the case.' " *Id.* (quoting § 17a, Stanley's Instructions to Juries, 2nd Ed.)); *Sears v. Frost's Adm'r, supra* note 3 ("The reason for avoiding [abstract instructions] is that they have a tendency to confuse or mislead the jury. Ordinarily, it is deemed simpler to make concrete or specific application of the law of the particular facts or conditions in the case." *Id.*).

5. *See* Robert G. Lawson and William H. Fortune, *Kentucky Criminal Law,* § 3-3(c)(3) at 115 (LEXIS 1998) ("There is little substantive difference in the conduct requirements of KRS § 502.020(1) and 502.020(2). The first speaks of acts of complicity in relationship to the *commission of an offense;* the second speaks of such acts in relationship to *conduct causing a result.*" *Id.* (italics in original)).

6. *See, e.g.,* KRS 502.020, Official Commentary (Banks/Baldwin 1974):

> The following example serves to demonstrate: D agrees with another person to commit an armed robbery. During the course of this robbery a third person is killed by D's cohort. If D and his co-conspirator had agreed as a part of the conspiracy to kill anyone interfering with their endeavor, he could be convicted under subsection (1) of intentional murder. *In the absence of such an agreement his liability must depend upon what the decision makers find his state of mind to have been with regard to the resulting death.* If, from all the circumstances, they find that he acted with wantonness manifesting extreme indifference to human life, he is guilty under KRS 507.020(1)(b) of murder; if they find that he acted with wantonness manifesting no such indifference, he is guilty under KRS 507.040 of manslaughter in the second degree, but if they find that he acted with recklessness in causing the death he is guilty under KRS 507.050 of reckless homicide. On the other hand, if they find that he had no culpability with regard to the death, he is not guilty of any charge involving homicide, notwithstanding the conspiracy to rob.

KRS 502.020(2) liability for complicity cannot fairly be described as being "guilty of an offense committed by another person."

Perhaps the confusion in the majority opinion stems from a misunderstanding of the term "offense." KRS 500.080(11) defines "offense" as a particular legislative sanction attached to particular conduct:

> "Offense" means conduct for which a sentence to a term of imprisonment or a fine is provided by any law of this state or by any law, local law, or ordinance of a political subdivision of this state or by any law, order, rule, or regulation of any governmental instrumentality authorized by law to adopt the same.[7]

Given this definition, I believe that KRS 502.020 creates one form of complicity under which a culpable party is "guilty of an offense committed by another," but this is contained at KRS 502.020(1), *not* KRS 502.020(2):

> 502.020 Liability for conduct of another; complicity
>
> (1) A person is *guilty of an offense committed by another person* when, with the intention of promoting or facilitating the commission of *the offense*, he:

> (a) Solicits, commands, or engages in a conspiracy with such other person to commit *the offense;* or
>
> (b) Aids, counsels, or attempts to aid such person in planning or committing *the offense;* or
>
> (c) Having a legal duty to prevent the commission of *the offense*, fails to make a proper effort to do so.
>
> (2) When causing a particular result is an element of an offense, a person who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense is guilty of that offense when he:
>
> (a) Solicits or engages in a conspiracy with another person to engage in the conduct causing such result; or
>
> (b) Aids, counsels, or attempts to aid another person in planning, or engaging in the conduct causing such result; or
>
> (c) Having a legal duty to prevent the conduct causing the result, fails to make a proper effort to do so.[8]

Each time the words "the offense" are used in KRS 502.020(1), they refer to the same antecedent: "an offense committed

---

*Id.* (emphasis added). D's cohort's crime is determined by his own mental state at the time of the killing, and D's cohort could have committed intentional murder. KRS 507.020(1)(a).

7. KRS 500.080(1). *See also* KRS 500.080(5) (" 'Felony' means *an offense* for which a sentence to a term of imprisonment of at least one (1) year in the custody of the Department of Corrections may be imposed;" *Id.* (emphasis added)); KRS 500.080(10) (" 'Misdemeanor' means *an offense*, other than a traffic infraction, for which a sentence to a term of imprisonment of not more than twelve (12) months can be imposed;" *Id.* (emphasis added)); KRS 500.080(17) (" 'Violation' means *an offense*, other than a traffic infraction, for

which a sentence to a fine only can be imposed;" *Id.* (emphasis added)).

8. KRS 502.020. *See also* Robert G. Lawson and William H. Fortune, *Kentucky Criminal Law, supra* note 5 at 106, § 3–3(b)(2) ("KRS 502.020(1) requires that there be 'an offense committed by another person.' Complicity in burglary, for example, requires proof beyond a reasonable doubt that the crime of burglary was committed by someone other than the defendant. The requirement is for *commission* of the underlying offense (not *guilt*) of the principal offender). Stated differently, 'the conviction of an accomplice is thus premised upon proof of the commission of the criminal act . . . .' " *Id.* (citations omitted, italics in original, underlined emphasis added).

by another person." By contrast, the words "committed by another person" do not appear at all in KRS 502.020(2), KRS 502.020(2)(a)(b) & (c) refer to "the result" rather than to an offense, and the only "offense" referred to in KRS 502.020(2) is the offense charged.

I find the majority opinion's attempts to justify the language in the trial court's complicity definition by selective quotations unpersuasive. Although the majority asserts that the title to KRS 502.020 supports the conclusion that KRS 502.020(2) liability makes a defendant "guilty of an offense committed by another person," the word "conduct," not "offense" appears in the statute's title. The majority also finds evidence for its claim in the "that offense" language contained in KRS 502.020(2), but context and the Official Commentary to this section illustrate that this language refers to the offense with which the defendant is charged rather than the particular offense committed by another person. Finally, the majority turns to the Official Commentary to KRS 502.020 for support, but while the Commentary which relates to KRS 502.020(1) is peppered with language including "a crime committed by another," "criminal act of another," and "an offense committed by one conspirator," [9] no such language appears in the portion of the Commentary addressing KRS 502.020(2), and, in fact, the Commentary discusses KRS 502.020(2) liability in terms of the "offense charged":

> Unlike subsection (1), this provision does not require for liability that a defendant intend to promote or facilitate the commission of an offense. It is required only that a defendant act with the kind of culpability sufficient for commission of the offense charged.[10]

The trial court's separate complicity definition was therefore erroneous in that it implied that the substantive complicity instructions predicated the defendant's guilt upon "an offense committed by another person." The majority opinion's defense of this language necessitates this separate opinion.

The majority also asserts that Tharp raised "neither at trial nor in the briefs" any issue regarding whether the trial court's complicity instructions were erroneous because they did not require the jury to make a factual finding that Tharp "was the parent and custodian of Elaina Curtis." This statement is factually incorrect. Although Tharp did not preserve by contemporaneous objection in the trial court *any* alleged errors with respect to the form of the complicity to homicide instructions, Tharp devotes almost two pages of her briefs to this exact issue. In fact, the argument itself is written in bold and, in support of her argument, Tharp cites, again in bold, the learned treatise written by the author of today's majority opinion:

### Instruction Did Not Require Finding That Appellant Had A Legal Duty To Prevent the Crime

. . .

The complicity to murder instruction under which Myrna Tharp was convicted was deficient because the jury was not required to find beyond a reasonable doubt that Myrna Tharp had "a legal duty to prevent the conduct causing the result" in question. KRS 502.020(2)(c). Assuming *arguendo* that the controlling law at the time of the victim's death created an affirmative legal duty for a parent to prevent physical injury by a

---

**9.** 1974 Kentucky Crime Commission/LRC Commentary to KRS 502.020.

**10.** *Id.*

third party to that parent's child, the jury still had to find beyond a reasonable doubt that Myrna Tharp was the parent of the child in question so that the legal duty to prevent the conduct in question actually applied to her. KRS 500.070(1); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The judge may not direct, as a matter of law, that the legal duty in question applies to the accused; that element must be found by the jury beyond a reasonable doubt. There can be little doubt that "[h]aving a legal duty to prevent the result" is an element of the offense of complicity to murder. KRS 502.020(2)(c).

Instructions that allow a jury to convict without finding every element of the offense violate Winship's requirement that "every fact necessary to constitute the crime" must be proven beyond a reasonable doubt. Due process "require[s] criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he his charged, beyond a reasonable doubt." *United States v. Gaudin,* 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). An instruction that relives the state of the burden of proving the complicity liability element of the offense beyond a reasonable doubt contradicts the presumption of innocence and invades the function of the jury, thereby violating due process.

The "definitions" instruction (Instruction No. 2) . . . did nothing to ameliorate the failure of the instruction to require a finding beyond a reasonable doubt that Myrna Tharp had "a legal duty to prevent the conduct [of Kenneth Tharp] causing the result" in question. KRS 502.020(2)(c).

Indeed, one model or form instruction based on the *Lane* decision specifically requires the jury to find the defendant guilty under this instruction only if the jury finds from the evidence beyond a reasonable doubt, *inter alia,* "[t]hat the Defendant was [the mother] of _____ (victim)." *1 Cooper, Kentucky Instructions to Juries (Criminal)* § 10.08A . . . . This model instruction recognizes that the jury must find that the legal duty in question applied to the defendant due to the defendant's status as a parent or legal guardian.

Despite this oversight, I do not fault the majority for addressing the unpreserved issues, as I believe the proper interpretation of KRS 502.020(2) should be clarified for the bench and bar.

To summarize, I do not believe that complicity under KRS 502.020(2) renders a defendant "guilty of an offense committed by another person," and I believe the trial court's separate definition of "complicity" was both unnecessary and erroneous. I agree with the result reached by the majority, however, because I do not believe the trial court's complicity to homicide instructions, including the erroneous separate complicity definition, prejudiced Tharp's substantial rights.

JOHNSTONE, J., joins this concurring opinion.